**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com
        sbeck@bursor.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL COTTRILL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>ZARBEE'S, INC.,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff, Ariel Cottrill ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant, Zarbee's, Inc. ("Defendant" or "Zarbee's"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge:

## **NATURE OF THE ACTION**

1.      This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the marketing and sales of Zarbee's Gripe Water (the "Product").

2.      Defendant promotes the Product as an effective remedy to address symptoms associated with colic in newborn babies. However, none of the ingredients have been shown to provide such advertised benefits. In fact, no cure has been developed for colicky infants.

3.      Throughout the Class Period (defined below) Defendant manufactured, sold, and distributed the Product using a marketing and advertising campaign that is centered around claims that it "helps ease occasional gas & stomach discomfort," associated with colic and hiccups. (the "Representations"). Defendant communicates the same substantive message throughout its advertising and marketing of the Product, including at point of sale and on the front of the Product packaging. Each consumer who has purchased the Product has been exposed to Defendant's misleading advertising.

4.      However, Defendant's Product does not provide effective relief for any symptoms. This is not surprising, as the Products main ingredients are water and organic agave syrup. The Product is nothing more than sweetened, flavored water with trace amounts of the Product's touted ingredients.

5.      One of the few reliable clinical studies available found that gripe water is ineffective for treating colic in newborns.[1]

---

[1] *Gripe Water Administration in Infants 1-6 Months of Age – A Cross-Sectional Study,* Keerthi Jain, et al., Journal of Clinical and Diagnostic Research; https://www.jcdr.net/article_fulltext.asp?issn=0973-709x&year=2015&month=November&volume=9&issue=11&page=SC06&id=6738 (last visited February 24, 2022).

6. As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Defendant has caused Plaintiff and the members of the Class to purchase a product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Product.

7. Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, breach of express warranty, breach of implied warranty of fitness for a particular purpose, and for unjust enrichment.

## **JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

10. Venue is proper because Plaintiff and many Class Members reside in the Northern District of California and Defendant sells its Product throughout the Northern District of California.

## **PARTIES**

11. Plaintiff, Ariel Cottrill, is an individual consumer who, at all times material hereto, was a citizen of California residing in Alameda County.

12. Plaintiff purchased Zarbee's Gripe Water for her child at a brick-and-mortar Target in Emeryville, California. Before purchasing the Product, Plaintiff reviewed information about the Product, including Defendant's representations on packaging labels that the Product "helps ease

occasional gas & stomach discomfort."  When purchasing the Product, Plaintiff also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representation and warranties by Defendant that the Product would relieve the advertised symptoms.

13.     Plaintiff relied on Defendant's false, misleading, and deceptive representations and warranties about the Product in making her decision to purchase the Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product had she known Defendant's representations were not true.  Defendant's Product did not work as advertised, and did not provide any relief of any of the advertised symptoms.

14.     Plaintiff paid approximately $11.00 for Zarbee's Gripe Water.  Had Plaintiff known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Product.  Plaintiff did not receive the benefit of the of her bargain, because Defendant's Product cannot improve the advertised symptoms. Plaintiff understood that each purchase involved a direct transaction between herself and Defendant, because her Product came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

15.     Defendant, Zarbee's, Inc., is a corporation with a principal place of business in Draper, Utah.  Defendant manufactures, markets, and advertises and distributes the Product throughout the United States.  Defendant manufactured, marketed, and sold the Product during the relevant Class period, including throughout the State of California.

## FACTUAL BACKGROUND

16.     Zarbee's Gripe Water is sold nationwide at a variety of retail chains, including Target, CVS, and Walmart as well as many online retailers, such as Amazon.

17.     As explained in detail below, Defendant makes numerous false and misleading representations regarding the Product.

**Zarbee's Gripe Water**

18.    The packaging for Zarbee's Gripe Water represents that it "helps ease occasional gas & stomach discomfort":

 

19.    Zarbee's Gripe Water promotes itself as "effective," with a "clinically supported formula," as shown above.

20.    The only highlighted ingredients on the Products packaging include 5mg of "ginger root extract," 75mg of "chamomile flower extract," 40mg of "lemon balm aerial extract," and 70mg "fennel seed extract" for the recommended serving size for an infant age 1 month through 6 months:

| Supplement Facts | | | |
|---|---|---|---|
| Serving Size:<br>Servings Per Container: | 1/2 tsp (2.5mL)<br>about 44 | 1 tsp (5mL)<br>about 22 | 1-1/2 tsp (7.5mL)<br>about 14 |
| Amount Per Serving | %DV Infants<br>2 through 4<br>Weeks of Age | %DV Infants<br>1 through 6<br>Months of Age | %DV Infants<br>6 through 12<br>Months of Age |
| Calories | 0 | 5 | 5 |
| Total Carbohydrate | <1 g    <1% | <1 g    <1% | 1 g    1% |
| Total Sugars | <1 g    † | <1 g    † | 1 g    † |
| Includes Added Sugars | <1 g    † | <1 g    † | 1 g    † |
| Chamomile Flower Extract | 37.5 mg  † | 75 mg   † | 112.5 mg † |
| Fennel Seed Extract | 35 mg   † | 70 mg   † | 105 mg  † |
| Lemon Balm Aerial Extract | 20 mg   † | 40 mg   † | 60 mg   † |
| Ginger Root Extract | 2.5 mg  † | 5 mg    † | 7.5 mg  † |

† Daily Value (DV) not established.

OTHER INGREDIENTS: WATER, ORGANIC AGAVE SYRUP, NATURAL FLAVORS, CITRIC ACID, POTASSIUM SORBATE (PRESERVATIVE)

21.     Other non-active ingredients include "Water, Organic Agave Syrup, Natural Flavors, Citric Acid, Potassium Sorbate (preservative)."

22.     None of the ingredients listed on the packaging have been shown to provide *any* relief for stomach discomfort associated with gas, colic, fussiness, and/or hiccups.[2]

23.     To the extent that any of these ingredients could in theory be effective, the serving size recommended is much too small to provide any possible relief.  For example, the ingredient label indicates the Product contains 5mg of ginger root extract.  With a total serving size of 1 teaspoon (5 ml), the amount of ginger root extracts contained in a single serving is approximately one thousandth of a teaspoon (0.0010 teaspoons).  The ingredient label further indicates 75mg of

[2] *Why Is Gripe Water Banned?*, Divya Jacob, MedicineNet; https://www.medicinenet.com/why_is_gripe_water_banned/article.htm (last visited February 24, 2022).

chamomile flower extract, 40mg of lemon balm aerial extract, and 70mg fennel seed extract.  This equates to approximately fifteen hundredth of a teaspoon (0.015 teaspoons) of chamomile flower extract, eight thousandth of a teaspoon (0.008 teaspoons) of lemon balm aerial extract, and fourteen hundredth of a teaspoon (0.014 teaspoons) of fennel seed extract. Ingredients in such trace amounts could provide no possible relief from the advertised symptoms.

24.     Accordingly, Zarbee's Gripe Water does not provide relief for any of the advertised symptoms.

**Gripe Water Products Are Not Effective**

25.     Colic is a term used to describe periods of significant distress in an otherwise well-fed, healthy baby.  Although no known cures are available, it has not stopped companies from exploiting struggling parents seeking to calm their newborns exhibiting prolonged periods of distress.

26.     Gripe water products have been around for over a century.[3]  Popularized in the 1850s by British mothers and nannies, gripe water's original formula consisted of a mixture of baking soda, alcohol, and herbs.[4]  Gripe water was thought to help calm a fussy baby; however, the appearance of any calming effects was likely due to the presence of alcohol.[5]  In reality, gripe water products have never been a safe nor effective means of addressing colic in newborns.

27.     Modern formulations of gripe water do not contain alcohol.  However, that does not stop companies, like Defendant, from seeking to capitalize from name recognition of this traditional remedy.

28.     There is very limited, reliable scientific literature studying the effectiveness of gripe water for treating symptoms associated with colic.  None of the herbal ingredients in Defendant's Gripe Water Product have been proven to provide relief for stomach discomfort related to gas, colic, or hiccups.

---

[3] https://www.medicalnewstoday.com/articles/318898#what-is-gripe-water (last visited August 23, 2021).
[4] *Id.*
[5] *Id.*

29.     In fact, Dr. Jennifer Chen, a pediatrician in California, has said that gripe water products likely will not help newborns suffering from colic.[6]

30.     This statement was confirmed by a study published in the Journal of Clinical and Diagnostic Research, finding that "most infants who received gripe water continued to cry excessively (suggestive of colic) compared to those who did not receive it."[7]

31.     Accordingly, the Product is not an effective means of addressing colic in newborns. To the extent that any ingredient in the Product could potentially provide some form of relief associated with stomach discomfort, the quantities that they are provided in are far too low to provide any therapeutic benefit.  Defendant made its claim about the benefits of consuming the Product (i.e. "helps ease occasional gas & stomach discomfort."), despite the Product being ineffective.

## CLASS ALLEGATIONS

32.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

33.     The Class is defined as all consumers who purchased Zarbee's Gripe Water  in the United States during the Class Period (the "Class").

34.     Plaintiff also seeks to represent a subclass defined as all class members who purchased Zarbee's Gripe Water in California during the Class Period (the "California Subclass").

35.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

---

[6] https://www.forbes.com/health/family/is-gripe-water-safe/ (last visited February 24, 2022).
[7] https://www.jcdr.net/article_fulltext.asp?issn=0973-709x&year=2015&month=November&volume=9&issue=11&page=SC06&id=6738.

36.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

37.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    (a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

    (b) Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Product;

    (c) Whether Defendant made false and/or misleading statements concerning the Product that were likely to deceive the public;

    (d) Whether Plaintiff and the Class are entitled to injunctive relief;

    (e) Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

38.    <u>Typicality</u>: Plaintiff is a member of the Classes she seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

39.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all other members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendant has acted in a manner generally applicable to the Class, making relief

appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

40.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.  In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

41.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a)  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b)  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—it not totally impossible—to justify individual actions;

(c)  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d)  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(e)  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f)  This class action will assure uniformity of decisions among Class Members;

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

(h) Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

(i) It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase the Product.

42.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT I**
**Violation of Consumers Legal Remedies Act**
**("CLRA") Civil Code §§ 1750, *et seq.***

43.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

44.     Plaintiff brings this claim individually, and on behalf of the California Subclass against Defendant.

45.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

46.     Plaintiff and members of the California Subclass are consumers who purchased Defendant's Grip Water Product for personal, family, or household purposes.  Accordingly, Plaintiff and members of the California Subclass are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

47.     At all relevant times, Defendant's Product constituted "goods," as that term is defined in Civ. Code § 1761(a).

48.     At all relevant times, Defendant was a "person," as that term is defined in Civ. Code § 1761(c).

49.     At all relevant times, Plaintiff's purchase of Defendant's Product, and the purchases of other Class and California Subclass members constituted "transactions," as that term is defined in Civ. Code § 1761(e).

50.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

51.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Product to Plaintiff and the California Subclass.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

52.     Defendant represented that its Product has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of California Civil Code § 1770(a)(5).

53.     Defendant represented that its Product was of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

54.     Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that its Product was safe and effective at providing relief for stomach discomfort in newborns, when in fact it was not.

55.     Defendant represented that its Product was of a particular standard or quality when Defendant was aware that it was of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that its Product was safe and effective at providing relief for stomach discomfort in newborns, when in fact it was not.

56.     Defendant advertised its Product with intent not to sell it as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant intended to not sell the Product as effective products,

because it knows the Product contains so-called active ingredients in inactive concentrations that are not effective.

57.     Plaintiff and members of the California Subclass suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and members of the Class and California Subclass would not have purchased the Product on the same terms if they had known the true facts; (b) Plaintiff and members of the Class and California Subclass paid a premium price due to the mislabeling of Defendant's Product; and (c) Defendant's Product did not have the level of safety, quality, effectiveness, or value as promised.

58.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  On August 18, 2021, Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

**COUNT II**
**Violation of False Advertising Law**
**Business & Professional Code §§ 17500, *et seq.***

59.     Plaintiff and members of the Class reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

60.     Plaintiff brings this claim individually, and on behalf of the California Subclass against Defendant.

61.     California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

62.     Throughout the Class Period, Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of the Product, as described above, including but not limited to, representing that the Product could relieve stomach discomfort in newborns, when in fact it could not.

63.     Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

64.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

65.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the California Subclass would not have purchased the Product if they had known the true facts regarding the effectiveness of the Product; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations about the Product; and (c) the Product did not have the promised quality, effectiveness, or value.

66.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiff and members of the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT III
### Violation of Unfair Competition Law
### Business & Professional Code §§ 17200, *et seq.*

67.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

68.     Plaintiff brings this claim individually, and on behalf of members of the California Subclass against Defendant.

69.     Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

70.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

71.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

72.     Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express and implied warranties as described herein.

73.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Product, as described above.

74.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

75.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Product will provide relief for stomach discomfort for their newborns.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of its Product is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about products for newborns.  Taking

advantage of that trust, Defendant misrepresents the effectiveness of its Product to increase its sales.  Consumers believe that Defendant is an authority on the effectiveness and quality of gripe water products for their newborns and therefore believe Defendant's representations that its Product can magically provide stomach relief for their newborns.

76.     Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Product is effective at providing relief related for stomach discomfort in newborns, when in fact it is not.

77.     Plaintiff and members of the California Subclass are not sophisticated experts with independent knowledge of the formulations or efficacy of gripe water products, and they acted reasonably when they purchased the Product based on their belief that Defendant's representations were true.

78.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Product were untrue and misleading.

79.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the California Subclass would not have purchased the Product on the same terms if they had known the true facts regarding the effectiveness and contents of the Product; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations of Defendant's Product; and (c) Defendant's Product did not have the quality and effectiveness or value as promised.

80.     Pursuant to *California Business & Professions Code §17*203, Plaintiff and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT IV**
**Breach of Express Warranty**

81.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

83.     As the designer, manufacturer, marketer, distributer, and/or seller, Defendant expressly warranted that the Product was effective and "helps ease occasional gas & stomach discomfort."

84.     Defendant's affirmations of fact and promise made to Plaintiff and the Class on the Product's labels and in online advertising, became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and Class members on the other, thereby creating express warranties that the Product would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

85.     However, clinical studies show that gripe water products cannot provide any appreciable relief to consumers.  Moreover, to the extent any of the ingredients could potentially provide relief to consumers, the quantities they are provided in are far too low to provide any therapeutic benefit.

86.     As such, Defendant breached this warranty because the Product is not effective for providing the advertised relief.  In short, the Product does not perform as expressly warranted.

87.     Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Product on the same terms if they had known the true facts; (b) they paid a price premium due to the mislabeling of the Product; and (c) the Product did not have the quality, effectiveness or value as promised.

88.     On or about August 18, 2021, prior to filing this action a pre-suit notice letter was served on Defendant which complied in all respects with U.C.C. § 2-607.  Plaintiff and the Class sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that

Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A**.

**<u>COUNT V</u>**
**Breach of Implied Warranty of Fitness for a Particular Purpose**

89.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

91.     Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of the Product made implied representations to Plaintiff and the Class that the Product was fit for the particular purpose of providing relief related to stomach discomfort in newborns. However, the Product is not capable of providing the aforementioned benefits. At the time the Product was sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment regarding the efficacy of the Product.

92.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose, Plaintiff and members of the Class purchased the Product for use to provide stomach relief for their newborns.

93.     The Product was not altered by Plaintiff or Class members.

94.     Defendant knew that the Product would be purchased and used without additional testing by Plaintiff and Class members.

95.     Plaintiff and members of the Class have sustained damages as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Product if the true facts concerning their efficacy had been known; (b) they paid a price premium for the Product based on Defendant's representations regarding the Product's efficacy; and (c) the Product did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and members of the Class have been damaged.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT VI
### Unjust Enrichment

96.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

97.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

98.     "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

99.     Plaintiff and Class members conferred a benefit on Defendant by purchasing the Product and by paying a price premium for it.

100.    Defendant has knowledge of such benefits.

101.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Product, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Product would "help ease occasional gas & stomach discomfort."  This misrepresentation caused injuries to Plaintiff and Class Members, because they would not have purchased the Product if the true facts regarding the effectiveness of the Product was known.

102.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class and Subclass, prays for judgment as follows:

(a)   Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class and the California Subclass under Rule 23 of the FRCP, and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

(b)   An order declaring Defendant's conduct violates the statutes referenced herein;

(c)   Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide;

(d)   Awarding monetary damages, including treble damages

(e)   Awarding punitive damages;

(f)   Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g)   Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  March 14, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:____/s/ *L. Timothy Fisher*_____
            L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
           sbeck@bursor.com

*Attorneys for Plaintiff*

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper venue for trial because many of the acts and transactions giving rise to this action occurred in this District.

3.      Plaintiff Ariel Cottrill is a resident of San Jose, California and purchased the product at issue in this District.

4.      Defendant Zarbee's, Inc. is a corporation with its principal place of business located in Draper, Utah.  Defendant manufactured, marketed, and sold the Product during the relevant Class period, including throughout the State of California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on March 14, 2022 at Walnut Creek, CA.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

**701 Brickell Ave.**
**SUITE 1420**
**MIAMI, FL 33131**
**www.bursor.com**

SARAH N. WESTCOT
Tel: **305.330.5512**
Fax: **305.679.9006**
swestcot@bursor.com

August 18, 2021

*<u>Via Certified Mail - Return Receipt Requested</u>*

Zarbees, Inc.
11650 S State St., Ste. 101
Draper, UT 84020-7144

> *Re: Notice and Demand Letter Pursuant to U.C.C. § 2-607; Cal. Civ. Code § 1782; Cal.*
> *Bus. & Prof. Code §§ 17200, 17500, et seq; Cal. Civ. Code §§ 1750, et seq.; and all*
> *other relevant state and local laws*

To Whom It May Concern,

This letter serves as a notice and demand for corrective action by Zarbee's, Inc. ("Defendant" or "You") arising from breaches of express and implied warranties on behalf of our client, Ariel Cottrill, and a class of all similarly situated purchasers of Zarbee's gripe water products. This letter further serves as notice of violations of all applicable consumer protection laws, including, but not limited to, California Business & Professions Code §§ 17200 & 17500, et seq, and California Civil Code §§ 1750, et seq.

You have participated in the marketing and sale of gripe water products, including Zarbee's Gripe Water (the "Product" or "Zarbee's Gripe Water"). Your labeling and advertisements claim that the Product is "clinically supported" to "[h]elp ease occasional gas and stomach discomfort." In reality, the Product is nothing more than sweetened, flavored water. This Product is ineffective and does not provide the advertised relief.

Ms. Cottrill purchased Zarbee's Gripe Water in reliance on Your representations that the Product would provide relief for stomach discomfort. The Product did not provide the advertised relief. Had Ms. Cottrill known the truth about the Product's ineffectiveness, she would not have purchased the Product.

Ms. Cottrill is acting on behalf of a class consisting of all persons in the United States who purchased Zarbee's Gripe Water within the relevant statute of limitations period. Ms. Cottrill is also acting on behalf of a subclass defined as all members of the class who purchased Zarbee's Gripe Water in California.

To cure the defects described above, we demand that you (1) cease and desist from further sales of Zarbee's Gripe Water, (2) issue an immediate recall of Zarbee's Gripe Water; and (3) make full restitution to all purchasers of Zarbee's Gripe Water of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the development and/or testing of Zarbee's Gripe Water;

2.      All documents concerning the advertisement, marketing or sale of Zarbee's Gripe Water;

3.      All documents concerning communications with any individual involved in the marketing or sale of Zarbee's Gripe Water, including all communications with retailers involved in the marketing or sale of the Product;

4.      All documents concerning communications with purchasers of Zarbee's Gripe Water, including but not limited to consumer complaints;

5.      All documents concerning agreements related to the marketing, promotion or sale of Zarbee's Gripe Water;

7.      All documents concerning the sales volumes of Zarbee's Gripe Water (in units and/or dollars), and the revenues derived therefrom; and

8.      All documents concerning the identities of class members who purchased Zarbee's Gripe Water.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Sarah N. Westcot

Sarah N. Westcot